IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex rel. DANA JOHNSON, | § | |
| | § | |
| Plaintiff-Relator, | § | |
| | § | |
| VS. | § | Civil Action No. 3:17-CV-1098-D |
| | § | |
| RAYTHEON COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff United States of America ("United States") and defendant Raytheon Company ("Raytheon") move to dismiss this action by plaintiff-relator Dana Johnson ("Johnson") under the False Claims Act, 31 U.S.C. §§ 3729-3733. Johnson brings a *qui tam* action of behalf of the United States and a retaliation claim on his own behalf related to Raytheon's defense contract with the United States Navy ("Navy"). For the following reasons, the court grants the United States's motion to dismiss, grants in part and denies in part as moot Raytheon's motion to dismiss, and grants Johnson leave to file a second amended complaint that repleads his retaliation claim. The court also denies without prejudice as moot a pending motion for protective order.

I

Johnson worked for Raytheon for 30 years.[1] Under Raytheon's contract with the

---

[1]The court recounts the background facts favorably to Johnson as the nonmovant. In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded

Navy, Raytheon agreed to provide special radars and upgraded equipment, and Johnson was assigned to work as a systems engineer aircraft test conductor. Johnson alleges that Raytheon did not perform its work according to the contractual terms—instead hiding problems from the Navy and misrepresenting the work it provided. Johnson asserts that Raytheon made false claims for payment related to four items: two software problems, test equipment, and incorrect configuration instructions.

Johnson also alleges that he "expressed concerns to supervisors about some aspects of the project," and that he "expressed concern to his supervisors about Raytheon's misrepresentation to the Navy." Am. Compl. ¶¶ 99, 102. Johnson avers that, after he expressed these concerns, Raytheon suspended him from the Navy project but allowed him to continue to work on other projects. He asserts that, at some point, both Raytheon and the Navy questioned and investigated him about a potential security violation, and his employment was terminated, even though he did not violate any security policies or do anything improper.

In April 2017 Johnson filed this action against Raytheon, alleging in his complaint *qui tam* claims on behalf of the United States and a retaliation claim on his own behalf. As required by law, the complaint was filed under seal to enable the United States to decide whether to intervene. After the United States declined to intervene, the court in July 2018

---

facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

ordered that the complaint be unsealed and served upon Raytheon. After Raytheon was served, it moved to dismiss the complaint. Johnson then filed a first amended complaint within the time allotted by Fed. R. Civ. P. 15(a)(1)(B). Raytheon now moves to dismiss Johnson's first amended complaint.

The court denied without prejudice as moot Raytheon's motion to dismiss Johnson's original complaint, but explained that the motion to dismiss Johnson's first amended complaint remained pending. The United States then requested, and the court granted, leave to file a statement or other pleading regarding its interests. Shortly thereafter, the United States filed the instant motion for partial dismissal, seeking to dismiss the claims that Johnson asserts on behalf of the United States.[2] Johnson opposes the United States's motion.

Raytheon has also filed a motion for protective order, which the court has referred to the magistrate judge. Raytheon seeks to preclude Johnson from obtaining discovery until after the court decides the motions to dismiss.

II

The court considers first the United States's motion to dismiss Johnson's *qui tam* claims under 31 U.S.C. § 3730(c)(2)(A).[3]

---

[2]The United States's motion for partial dismissal refers to Johnson's "complaint"—not to his "first amended complaint." Because the live pleading at the time the United States filed its motion was the "first amended complaint," the court views the United States's motion to dismiss as relating to the first amended complaint.

[3]The court notes that Raytheon also moved to dismiss pursuant to § 3730(c)(2)(A), but, unlike the United States, Raytheon seeks dismissal of all of Johnson's claims. As a preliminary matter, the court is not convinced that Raytheon has standing to seek dismissal

A

Pursuant to 31 U.S.C. § 3730(c)(2)(A) "[t]he Government may dismiss the [*qui tam*] action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." The United States retains the unilateral authority to seek dismissal in *qui tam* actions "notwithstanding the objections of the person." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (en banc) (citation omitted). The Fifth Circuit has not, however, expressly established a standard that courts should apply when evaluating a motion to dismiss under § 3730(c)(2)(A). Other circuits have adopted standards, but they are not identical. For example, the D.C. Circuit has adopted a deferential standard, finding that the government's decision not to pursue a *qui tam* action is "unreviewable" and "generally committed to [the government's] absolute discretion." *Swift v. United States*, 318 F.3d 250, 251-52 (D.C. Cir. 2003) (holding that § 3730(c)(2)(A) provides the government a virtually "unfettered right to dismiss [the] action."). The Ninth Circuit, on the other hand, has employed a less deferential standard, holding that a *qui tam* action may be dismissed under § 3730(c)(2)(A) if "the government offers reasons for dismissal that are rationally related to a legitimate government interest." *United States ex rel.*

---

under § 3730(c)(2)(A). *See* 31 U.S.C. § 3730(c)(2)(A) ("The *Government* may dismiss . . . ."). The court declines to address whether Johnson's retaliation claim should be dismissed pursuant to § 3730(c)(2)(A), because the United States does not seek dismissal of that claim at this time. The court addresses Raytheon's other arguments with respect to Johnson's retaliation claim *infra* at § III(C).

*Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1147 (9th Cir. 1998); *accord Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005) (adopting the *Sequoia* "rational relation" standard).

B

Regardless which standard the court employs in this case, the outcome is the same: dismissal under § 3730(c)(2)(A) is warranted. Applying *Swift*, the court would conclude that the United States should not be compelled to permit a relator to sue on its behalf and that the statutory language does not require—or even permit—judicial review of this discretionary decision. *See Swift*, 318 F.3d at 251-52.

Further, the United States explains in its motion that (1) a substantial portion of the information necessary to prosecute and defend Johnson's claims would be classified; (2) contrary to Johnson's assertion, there is no clear way to allow discovery without the attendant risk that classified information may be disclosed; and (3) it wants to avoid spending further resources on what, in its view, is a meritless action. Thus even if the court were to apply the "rational relation" standard, it would hold that the United States has satisfied its burden. The United States has identified valid governmental interests—avoiding the disclosure of classified information and avoiding the expenditure of government resources—that are rationally related to dismissing the action. *See Ridenour*, 397 F.3d at 936-37. And Johnson has not shown that dismissal is "fraudulent, arbitrary and capricious, or illegal." *Id.*

Johnson maintains that he is entitled to a hearing before the court dismisses his *qui*

*tam* claims. Section 3730(c)(2)(A) does provide that a relator is entitled to "an opportunity for a hearing on the motion [to dismiss]." Although Johnson posits that "an opportunity for a hearing" should be a live hearing before the court, he presents no case law to support his position. Instead, Johnson concedes—and the United States concurs—that courts have concluded that § 3730(c)(2)(A)'s hearing requirement is satisfied when the relator has a formal opportunity to respond (i.e., via a written response). *See, e.g., Swift*, 318 F.3d at 253 ("[T]he function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case."); *United States ex rel. May v. City of Dallas*, 2014 WL 5454819, at *3-4 (N.D. Tex. Oct. 27, 2014) (Godbey, J.) (adopting findings and recommendation of the United States Magistrate Judge). This court thus follows the conclusion that § 3730(c)(2)(A)'s hearing requirement is satisfied by affording Johnson an opportunity to respond to the United States's motion to dismiss before entering a decision on the motion.

In Johnson's response, he acknowledges that, following dicta in *Riley* and the holding in *Swift*, the United States has unilateral authority to seek dismissal of a *qui tam* action. Johnson argues that the motion should be denied, however, because the United States does not specifically contest Johnson's allegations and because he disagrees with the United States's determination that classified information would necessarily be disclosed. But there is no requirement that the government specifically deny a relator's allegations in order to seek dismissal under § 3730(c)(2)(A). Indeed, such a requirement would be contrary to cases such as *Swift*, in which the government conceded the *truth* of the relator's allegations when

it sought to dismiss (and the court granted dismissal). *Swift*, 318 F.3d at 254. Furthermore, Johnson's disagreement with—and attempt to plead around—the United States's determination regarding classified information is of no consequence. Again, the United States's goal of minimizing disclosure of classified information is a valid governmental interest, and Johnson has neither pleaded nor established that the United States's prosecutorial judgment is arbitrary and capricious, illegal, or fraudulent. *See id.*; *see also Ridenour*, 397 F.3d at 936-938.

Accordingly, the court grants the United States's motion to dismiss Johnson's *qui tam* claims under § 3730(c)(2)(A).

III

The court turns next to Raytheon's motion to dismiss under Rules 8(a), 9(b), and 12(b)(6).

A

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Raytheon's motion to dismiss, Johnson must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron,*

*Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

B

Raytheon seeks dismissal of all of Johnson's claims—that is, both the *qui tam* claims and the retaliation claim. As to Johnson's *qui tam* claims, Raytheon argues that they should be dismissed under Rules 8(a) and 9(b) because materiality is not properly pleaded in Johnson's first amended complaint. The court need not address whether Johnson plausibly pleads materiality, however, because the court grants the United States's motion to dismiss the *qui tam* claims *supra* at § II(B). Thus Raytheon's motion to dismiss the *qui tam* claims is denied without prejudice as moot.

C

As to Johnson's retaliation claim, the parties dispute whether Johnson has adequately pleaded a False Claims Act whistleblower retaliation claim. The False Claims Act's antiretaliation provision states:

> [a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To establish a claim under § 3730(h), Johnson must show: "(1) that [he] was engaged in protected activity with respect to the False Claims Act; (2) that [his]

employer knew [he] was engaged in protected activity; and (3) that [he] was discharged because [he] was engaged in protected activity." *Thomas v. ITT Educ. Servs., Inc.*, 517 Fed. Appx. 259, 262 (5th Cir. 2013) (per curiam) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)). Raytheon challenges whether Johnson has pleaded facts to support any of these elements under Rule 8(a).

1

Raytheon contends that Johnson's pleading "undercuts his ability to show that he was engaged in a protected activity." D. Br. 22. More specifically, Raytheon posits that, because Johnson has failed to adequately plead materiality in connection with his *qui tam* claims, his retaliation claim must also fail. Raytheon's materiality argument does not support dismissal of a retaliation claim, however, because conduct may be protected regardless whether it leads to an actual *qui tam* action.

The 2009 amendment to § 3730(h) confirms that an actual *qui tam* action is not required in order for an activity to be deemed "protected." *See United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 371 n.5 (5th Cir. 2011) (per curiam) (quoting Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009)). The amendment expanded protected activity to include "other efforts to stop 1 or more violations of [the False Claims Act]."[4] § 3730(h). In making its argument that Johnson needs a viable *qui tam* claim to

---

[4]Prior to 2009, the False Claims Act antiretaliation provision stated:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated

sustain his retaliation claim, Raytheon appears to rely on the prior version of § 3730(h) and on case law outside the Fifth Circuit that interprets the prior version.[5]

Although the Fifth Circuit has not in a published opinion interpreted § 3730(h)'s "new" statutory language regarding the scope of protected activity,[6] it has acknowledged the amended language in an unpublished opinion. *See Thomas*, 517 Fed. Appx. at 262. It has not, however, suggested that a viable *qui tam* claim is a prerequisite for a viable retaliation claim. *See id.* at 262-63. Instead, the Fifth Circuit has confirmed the overarching principle that "[a] protected activity is one motivated by a concern regarding fraud against the

> against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

[5]The primary case that Raytheon relies on to support its argument, *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338 (4th Cir. 2010), is no longer followed by the Fourth Circuit. In *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190 (4th Cir. 2018), the Fourth Circuit acknowledged that the 2009 amendment broadened the scope of protected activity, and, as a result, the Fourth Circuit no longer applies *Mann*'s "narrower old standard" that requires litigation be a "distinct possibility." Instead, the Fourth Circuit explained that "an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the [False Claims Act]." This court therefore rejects Raytheon's contention that Johnson must meet the standard stated by *Mann* in order to sustain his retaliation claim.

[6]The Fifth Circuit has in a published opinion interpreted portions of § 3730(h)'s language as amended. *See United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323-24 (5th Cir. 2016) (addressing the required statutory relationship in amended § 3730(h)). But so far as this court is aware, the Fifth Circuit has not in a published opinion interpreted the portion of the amended language that addresses the scope of protected activity.

- 11 -

government." *Id.* at 262 (citing *Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)). Thus as was the case under the prior version of § 3730(h), it is reasonable that "internal complaints that 'concern false or fraudulent claims for payment submitted to the government' [constitute] protected activity" as long as "the complaints raise concerns about fraud." *United States ex rel. George v. Bos. Sci. Corp.*, 864 F.Supp.2d 597, 605 (S.D. Tex. 2012) (Rosenthal, J.) (quoting *Patton*, 418 Fed. Appx. at 372); *see also Robertson*, 32 F.3d at 951 (concluding that plaintiff claiming False Claims Act retaliation was not engaged in protected activity because his "reporting was qualitatively different" from that of successful plaintiffs who "did express concerns about possible fraud to their employers").

The question whether Johnson's first amended complaint adequately alleges protected activity is close. Johnson alleges that he "expressed concerns to supervisors about some aspects of the project, including questionable project statuses provided by Raytheon to the Navy" and that he "expressed concern to his supervisors about Raytheon's misrepresentation [presumably regarding the provision of all new software] to the Navy." Am. Compl. ¶¶ 99, 102. In his response, Johnson summarily posits that he "alleges reporting of a violation." The Fifth Circuit has explained, however, that without a suggestion from the employee that he "was attempting to expose illegality or fraud within the meaning of the [False Claims Act], activity is not of the "protected" variety. *Patton*, 418 Fed. Appx. at 372; *see also Robertson*, 32 F.3d at 952 (upholding finding of no protected activity where employee "never characterized his concerns as involving illegal, unlawful, or false-claims investigations"); *United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *26 (N.D. Tex. June 20,

2016) (Lynn, C.J.). Johnson's allegations, as currently pleaded, fail to plausibly allege that Johnson suggested that he was attempting to expose illegality or fraud within the meaning of the False Claims Act.

2

Johnson's pleading inadequacies are more apparent when considering whether he adequately alleges that his activity put his supervisors at Raytheon on notice of a False Claims Act violation. The court cannot conclude based on Johnson's current allegations that he adequately alleges that his employer knew of his "protected activity." Indeed, "[a]n employee's allegations that he complained about his employer's errors in performing a government contract are insufficient unless the employee specifically referred to fraudulent claims for payment for those services, putting the employer on notice of potential [False Claims Act] liability." *United States ex rel. Ligai v. ETS-Lindgren Inc.*, 2014 WL 4649885, at *16 (S.D. Tex. Sept. 16, 2014) (Rosenthal, J.), *aff'd sub nom. United States ex rel. Ligai v. ESCO Techs., Inc.*, 611 Fed. Appx. 219 (5th Cir. 2015); *see also Patton*, 418 Fed. Appx. at 372-73. Johnson does allege that his "coworkers were aware that [he] kept whistleblower toll free telephone numbers in his wallet." Am. Compl. ¶ 103. But even viewed in the light most favorable to Johnson, this allegation, standing alone and untethered to Johnson's supervisors or the reported misrepresentation, does not plausibly allege that Johnson's supervisors knew that he was engaged in protected activity.

3

Similarly, Johnson does not adequately plead the causal connection between his

termination and his allegedly protected activity. To possess the retaliatory intent necessary to establish a violation of § 3730(h), Johnson's retaliating supervisors must have had knowledge that Johnson was investigating fraud. *See Patton*, 418 Fed. Appx. at 372 (citing *Robertson*, 32 F.3d at 952). In his first amended complaint, Johnson alleges neither who actually terminated him nor whether the person who terminated him was aware of his "protected activity." Instead, Johnson refers to Raytheon collectively, e.g., "Raytheon terminated Johnson's employment" and "Raytheon provided vague reasons for his termination." Am. Compl. ¶¶ 121, 124. Such collective pleading is insufficient to plausibly state a causal connection between protected activity and termination. *See Jamison v. Fluor Fed. Sols., LLC*, 2019 WL 460304, at *9 (N.D. Tex. Feb. 6, 2019) (Scholer, J.) (concluding that plaintiff did not sufficiently allege final element of retaliation claim where he did not allege that his direct supervisor was involved in his termination or that the person who made termination decision was aware of plaintiff's protected activity), *appeal docketed*, No. 19-10278 (5th Cir. Mar. 8, 2019).

Accordingly, Johnson's § 3730(h) retaliation claim is dismissed.

IV

Johnson requests leave to replead should the court conclude that his first amended complaint is insufficient. Raytheon maintains that, because Johnson has failed for a second time to adequately plead his claims, leave to amend should be denied.[7]

---

[7]Raytheon also contends that Johnson's request for leave to amend is inadequate because he has failed to attach the proposed amended pleading as an exhibit, in violation of

The court recognizes that Johnson has amended once already, but this was done, as Raytheon points out, as a matter of course within the time period provided by Rule 15(a)(1)(B). Moreover, a plaintiff is often able to state a plausible claim for relief when amending after a motion to dismiss has been granted. *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (after twice granting motions to dismiss, concluding that plaintiff's second amended complaint stated claim on which relief could be granted). Accordingly, although the court is in part granting Raytheon's motion to dismiss, it will permit Johnson to file a second amended complaint for purposes of pleading a plausible retaliation claim, if he is able to do so. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). The court grants Johnson 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

V

Finally, the court withdraws the reference to the magistrate judge of Raytheon's pending motion for a protective order, and it denies the motion as moot.

Raytheon seeks a protective order forbidding Johnson to obtain discovery until after

---

N.D. Tex. Civ. R. 15.1. The court declines to deny leave to amend on this basis.

the court decides the instant motions to dismiss. Although Johnson initially opposed Raytheon's motion, Johnson has advised the court that he does not object to an extension of the discovery response deadlines until the court decides the motions to dismiss. Because there is no current disagreement among the parties on the discovery issue and the court is today deciding the motions to dismiss, the court withdraws the reference to the magistrate judge and denies Raytheon's motion for a protective order without prejudice as moot.

\* \* \*

For the reasons explained, the court grants the United States's motion to dismiss the *qui tam* claims, denies as moot Raytheon's motion to dismiss the *qui tam* claims, and grants Raytheon's motion to dismiss the retaliation claim. The court grants Johnson leave to file a second amended complaint addressing the retaliation claim within 28 days of the filing of this memorandum opinion and order. Raytheon's motion for a protective order is denied without prejudice as moot.

**SO ORDERED**.

July 3, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE