IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. DANA JOHNSON, | § § § § § § § § § § § | |
| Plaintiff-Relator, | | |
| VS. | | Civil Action No. 3:17-CV-1098-D |
| RAYTHEON COMPANY, | | |
| Defendant. | | |

MEMORANDUM OPINION
AND ORDER

Following an earlier decision dismissing this *qui tam* action by plaintiff-relator Dana Johnson ("Johnson") with leave to replead, *see United States ex rel. Johnson v. Raytheon Co.* (*Johnson I*), 395 F.Supp.3d 791, 800 (N.D. Tex. 2019) (Fitzwater, J.), the court now addresses the motion of defendant Raytheon Company ("Raytheon") to dismiss Johnson's second amended complaint, in which he attempts to plead a plausible retaliation claim under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. For the following reasons, the court denies Raytheon's motion and also denies Raytheon's motion for protective order.[1]

I

Because the pertinent background facts and procedural history are set out in *Johnson*

---

[1]On November 12, 2019 Raytheon filed a motion for protective order, contending that Johnson's discovery should be stayed, or, at a minimum, that Raytheon should only be required to respond to his requests 30 days after the resolution of the currently-pending motion to dismiss. In view of today's decision denying the motion to dismiss, Raytheon's motion is either moot or should be resolved by agreement of the parties.

*I*, 395 F.Supp.3d at 793-94, the court will recount them only as necessary to understand this decision.

Johnson was a systems engineer aircraft test conductor for Raytheon, a defense contractor with the Navy that provided special radars and upgraded equipment.[2] After Johnson allegedly investigated potential false claims for payment, Raytheon terminated his employment in October 2015. Johnson filed this action against Raytheon in April 2017, asserting *qui tam* claims on behalf of the United States of America ("United States") and a retaliation claim on his own behalf. The United States declined to intervene in the case, and the court ordered that the complaint be unsealed and served upon Raytheon. After Johnson amended his complaint, the United States moved to dismiss Johnson's *qui tam* claim, and Raytheon moved to dismiss both Johnson's *qui tam* claim and his retaliation claim. The court granted the United States's motion, denied Raytheon's motion as to the *qui tam* claim as moot, granted Raytheon's motion as to the retaliation claim, and granted Johnson leave to file a second amended complaint to replead his retaliation claim. *Johnson I*, 395 F.Supp.3d at 799-800.

In his second amended complaint, Johnson alleges that in four instances he engaged in protected activity by investigating Raytheon's false claims for payment. He asserts that

---

[2]The court recounts the background facts favorably to Johnson as the nonmovant. In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

Raytheon retaliated against him for these investigations by pretextually investigating him and ultimately terminating his employment. Raytheon moves to dismiss the second amended complaint, contending that Johnson has failed to state a plausible claim on which relief can be granted, that his claim is time-barred, and that the government's interest in protecting classified information and national security throughout the resolution of the case warrants dismissal.

II

The court turns first to Raytheon's contention that Johnson's retaliation claim must be dismissed for failure to state a claim on which relief can be granted.

A

Under Fed. R. Civ. P. 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Raytheon's motion to dismiss, Johnson must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be

enough to raise a right to relief about the speculative level."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

The FCA's antiretaliation provision states:

> [a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To establish a claim under § 3730(h), Johnson must prove: "(1) that [he] was engaged in protected activity with respect to the [FCA]; (2) that [his] employer knew [he] was engaged in protected activity; and (3) that [he] was discharged because [he] was engaged in protected activity." *Thomas v. ITT Educ. Servs., Inc.,* 517 Fed. Appx. 259, 262 (5th Cir. 2013) (per curiam) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d

948, 951 (5th Cir. 1994)). Raytheon maintains that Johnson has failed to allege sufficient facts to plead a plausible retaliation claim.

III

A

Johnson alleges that, in four separate instances, he engaged in protected activity of which his supervisors were aware. In the first—which is the only one the court need consider in order to deny Raytheon's motion, *see infra* § III(C)[3]—Johnson alleges that the Navy contracted with Raytheon to provide software for a radar mode in military aircraft. He avers that he told Brian Cook ("Cook"), his software manager, that a line of software code rendered the radar mode inoperable. According to Johnson, he corrected the code. But when the radars were not properly calibrated to function with the corrected code, "Johnson informed Cook that he could not certify completion under the contract because it would be a false statement to the Navy for payment under the contract." 2d Am. Compl. 3. Cook then represented to the Navy that the radar mode project had been completed under the contract, and the Navy paid for the project based on the alleged false representation.[4]

---

[3]Whether Johnson's allegations as to the remaining three instances are adequate to support a retaliation claim is a closer question. Nevertheless, the court concludes that Johnson's allegations regarding the first instance are sufficient to state a plausible claim.

[4]In the second instance, Johnson alleges that he reported to his supervisors a radar system initialization issue and recommended the installation of newer software. Johnson's supervisors informed him that the software update would occur within the next few months, but the software was never updated. When Raytheon sent an email to the Navy stating that the initialization problem was solved, Johnson allegedly informed his supervisors that Raytheon "was not performing as represented under the contract with the Navy" and that it

Johnson alleges that "[i]n each of the four protected activities, Johnson characterized his concerns as involving illegal, unlawful, or false claims investigations," and that he "informed his superiors that Raytheon was making untruthful assertions and representations to the Navy under Raytheon's contract with the Navy." *Id*. at 11. Johnson asserts that "in each instance he identified misrepresentations and concealment related to Raytheon's contract with the Navy for payment of services not provided but promised[.]" *Id.* at 11. He also avers that "each of [his] supervisors, Carpenter, Blazo, Leddy, and Cook, among others, knew that Johnson was investigating fraud," and that he was instructed not to talk to the Navy about the problems. *Id.* at 13. He further asserts that, after he reported problems with the Navy contract, Raytheon's security department began investigating him for security violations, an action that he maintains was pretextual. Finally, Johnson alleges that "[a]

---

"would be false to represent to the Navy that the initialization problem was solved when it was not solved." 2d Am. Compl. 6. Johnson avers that he was instructed to stay quiet about the problem and was directed not to tell the Navy that something was not working. He informed Mack Slater ("Slater"), who worked with Raytheon's security department, that if he was asked directly, he would not make a false statement to the Navy. Raytheon then began to investigate Johnson based on alleged security violations.

     In the third instance, Johnson alleges that Raytheon's security department damaged test equipment purchased by the Navy and concealed this information from the Navy. Johnson informed supervisor, Rocky Carpenter ("Carpenter"), about the damage. Carpenter allegedly acknowledged to Johnson that "it was a problem." *Id*. at 8. Johnson contends that "[t]his put Raytheon on notice of potential liability under the False Claims Act." *Id.*

     In the fourth instance, Johnson alleges that Raytheon represented to the Navy that computer laptops would function properly. Johnson could not properly configure the laptops without a firewall instruction, which Raytheon's security department removed. He informed Carpenter that because of the omission in the instruction guide for the laptops regarding the firewall protocol, the laptops would not function properly. He alleges that Raytheon kept this information from the Navy and that by informing Carpenter of the "problem," he placed Raytheon on notice of potential liability under the FCA.

Raytheon Vice President made the decision to terminate [him] based on the recommendation of the Security Department and after communicating with [his] supervisors, all of whom were aware of [his] investigation of fraud[.]" *Id.* at 14.

B

Raytheon contends that these allegations are insufficient to state a claim because they are conclusory and because Johnson "merely claim[ed] that Raytheon was under contract with the Government and that it made false representations." D. Br. 13. In other words, Raytheon asserts that, absent Johnson's conclusory allegations that he characterized each instance as involving a false claims investigation, Johnson did not allege that "he investigated the fraud as it pertained to statements by Raytheon in order to obtain payment[.]" *Id.* Raytheon therefore maintains that Johnson has failed to plausibly plead that he engaged in protected activity. In a footnote in its brief, however, Raytheon acknowledges that "[t]here is one exception to this failure"—Johnson has adequately alleged that he engaged in a protected activity when he stated "that he would not certify completion under the contract because it would be a false statement to the Navy for payment under the contract." *Id.* at 13 n.7.

Raytheon also asserts that, with the exception of the first instance, Johnson has not established the second element of his retaliation claim because he does not specifically refer to fraudulent claims for payment and therefore has not shown that he placed his employer on notice of his protected activity. *Id.* at 14. Raytheon contends that Johnson has not established the third element of causal connection between *any* of his alleged protected

activity, including the first instance, and his ultimate termination because he has failed "to allege who actually terminated him—referring only to an unnamed Vice President," and he does not make clear "whether that Vice President was aware of his protected activity." *Id.* at 15.

C

The court need only consider whether Johnson has pleaded a plausible retaliation claim based on the first instance on which he relies.

1

As Raytheon acknowledges, Johnson has plausibly alleged the first element—that he engaged in protected activity—by informing Cook that he could not certify completion under the contract because it would be a false statement to the Navy for payment under the contract. Indeed, Johnson's allegation that he specifically informed Cook that the certification of completion would be a false statement to the Navy for payment under the contract falls squarely within the ambit of "protected activity." *See United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 372 (5th Cir. 2011) (per curiam) ("For internal complaints to constitute protected activity 'in furtherance of' a *qui tam* action, the complaints must concern false or fraudulent claims for payment submitted to the government.").

2

To establish the second element of an FCA retaliation claim, Johnson must allege that his activity put the defendant "on notice of [an FCA] violation." *Johnson*, 395 F.Supp.3d at 798. But "a "[p]laintiff need not allege some smoking gun instance when Defendant was put

on notice of his activities—indirect or constructive notice is sufficient." *Jamison v. Fluor Fed. Sols., LLC*, 2017 WL 3215289, at *8 (N.D. Tex. July 28, 2017) (Boyle, J.) (citing *Schuhardt v. Wash. Univ.*, 390 F.3d 563, 568 (8th Cir. 2004)). For instance, "[c]ourts have found this notice prong satisfied based on allegations that the employee complained directly to her supervisors." *United States ex rel. George v. Bos. Sci. Corp.*, 864 F.Supp.2d 597, 608 (S.D. Tex. 2012) (Rosenthal, J.) (citing *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 32 (1st Cir. 2012)). To provide such notice by way of internal reporting, the employee "must specifically tell the employer that he is concerned about possible fraud." *Henry v. CRC Health Corp.*, 2014 WL 12639082, at *4 (W.D. Tex. June 24, 2014) (quoting *United States ex rel. Smith v. Yale Univ.*, 415 F.Supp.2d 58, 105 (D. Conn. 2006)).

Here, Johnson alleges that he reported the alleged false claim for payment in the first instance to his direct supervisor, Cook. His specific allegation that certification would be a false claim for payment adequately notified his employer that he was "concerned about possible fraud." The court therefore holds that Cook has plausibly pleaded that he placed his employer on notice of his protective activity by reporting the alleged fraud to his direct supervisor.

3

To establish the final element of an FCA retaliation claim, Johnson must demonstrate that "the employer's 'retaliation was motivated by the protected activity.'" *George*, 864 F.Supp.2d at 609 (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005)). As the court explained in *Johnson I*, "to possess the retaliatory intent necessary to establish a

violation of § 3730(h), Johnson's retaliating supervisors"—not simply the supervisor to whom Johnson reported the alleged FCA violations—"must have had knowledge that Johnson was investigating fraud." *Johnson I*, 395 F.Supp.3d at 799; *see also Jamison v. Fluor Fed. Sols., LLC*, 2019 WL 460304, at *9 (N.D. Tex. Feb. 6, 2019) (Scholer, J.) (concluding that plaintiff did not sufficiently allege final element of retaliation claim where he did not allege that his direct supervisor was involved in his termination), *appeal docketed*, No. 19-10278 (5th Cir. Mar. 8, 2019).

Johnson alleges in his second amended complaint that "[a] Raytheon Vice President made the decision to terminate Johnson based on the recommendation of the Security Department and after communication with Johnson's supervisors[.]" 2d Am. Compl. 14. Contrary to Raytheon's assertions, Johnson specifically pleads that Cook—his software manager—was among "Johnson's supervisors" who "knew that Johnson was investigating fraud" and that Cook was involved in Johnson's termination because the Vice President consulted with him before the termination decision.[5] 2d Am. Compl. 13. Because the showing necessary to demonstrate the causation prong of Johnson's retaliation claim is "not onerous" at this stage, and because Raytheon does not challenge Johnson's causation theory beyond that of his allegations regarding the termination decision, the court concludes that

---

[5]Raytheon contends that these allegations constitute deficient "collective pleading" of the type the court rejected in *Johnson I*, 395 F.Supp.3d at 799. The court disagrees. Because Johnson pleads that a Raytheon Vice President, not Raytheon *collectively*, terminated his employment, Johnson's second amended complaint no longer relies on collective pleading and therefore is not inadequate on that basis.

Johnson has adequately pleaded the third element. *See George*, 864 F.Supp.2d at 609 (citing *United States ex rel. Dyson v. Amerigroup Tex., Inc.*, 2005 WL 2467689, at *3 (S.D. Tex. Oct. 6, 2005)) ("[T]he showing necessary to demonstrate the causal-link part of the *prima facie* case is not onerous; the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."). The court therefore holds that Johnson has stated a plausible FCA retaliation claim, at least based on the first instance on which he relies.

IV

The court turns now to Raytheon's motion to dismiss Johnson's FCA retaliation claim as time-barred.

A

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr.17, 2002) (Fitzwater, J.). Furthermore,

"[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [him]self out of court." *W. Fork Partners, L.P. v. Chesapeake Expl., L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)).

B

Raytheon contends that Johnson's retaliation claim is time-barred under 31 U.S.C. § 3730(h)(3), which provides that a retaliation claim cannot be brought more than three years after the date when the retaliation occurred. Because Johnson's termination occurred in October 2015 and he "had two opportunities to adequately plead his retaliation claim during and at the tail end of that statute of limitations period," Raytheon asserts that Johnson "should not now be able to plead a retaliation claim, yet again, outside of that statute of limitations as a result of his own pleading deficiencies." D. Br. 15, 16.

Johnson responds that his retaliation claim is not time-barred because it relates back to his original complaint ("complaint") under Rule 15(c). He asserts that he was terminated on October 12, 2015 and that he filed his complaint alleging retaliation on April 25, 2017. He contends that the retaliation claim raised in the second amended complaint is the same claim alleged in the complaint and that it arises out of the same conduct, transaction, or occurrence as in the complaint.

Raytheon agrees that the facts likely relate back to the filing of the complaint, but it maintains that "the pleading was so sparse . . . that is impossible to discern exactly which

facts and allegations do and do not relate to the original claims." D. Reply 3 n.1. For this reason, Raytheon asserts that "anything that does not specifically relate back to the initial claims or protected activity is barred[.]" *Id.*

C

> [Rule] 15(c) provides that, in certain circumstances, amendments to pleadings relate back to the date of the original pleading. One of those circumstances is when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Thus, the focus is not the caption given a particular cause of action, but the underlying facts upon which the cause of action is based. The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation.

*Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005) (citations, quotation marks, and ellipsis omitted).

Johnson's complaint sufficiently sets out facts underlying his retaliation claim, and therefore the second amended complaint relates back to the date the complaint was filed. Although the details of the alleged retaliation were not fleshed out in the complaint, Johnson provided Raytheon fair notice that litigation was arising from factual situations involving Johnson's "reporting . . . problems to his managers and to Raytheon's security department." Compl. 10. Johnson alleged in his complaint that he "expressed concerns to supervisors about some aspects of the project, including questionable project statuses provided by Raytheon to the Navy," such as Raytheon's alleged "represent[ation] to the Navy that it provided all new software on a program contracted to Raytheon and to which Johnson was

- 13 -

assigned as a Systems Engineer." *Id.* at 11. Because Johnson's second amended complaint merely provides further detail regarding his original retaliation claim, the claim asserted in the second amended complaint is not time-barred, and Johnson has not pleaded himself out of court. *See, e.g., DT Apartment Grp., LP v. CWCapital, LLC,* 2012 WL 6693192, at *27 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.) (holding that claim related back to original complaint where amended complaint simply provided further details of the factual allegations). Consequently, the court denies the motion to dismiss on the basis of limitations.

V

The court now considers Raytheon's contention that the government's interests warrant dismissal of Johnson's retaliation claim.

A

Raytheon contends that Johnson's second amended complaint should be dismissed "pursuant to the principles in 31 U.S.C. § 3730(c)(2)(A) due to the Government's strong interest in maintaining the confidential nature of . . . classified information . . . and avoiding the burden of monitoring this case as it proceeds." D. Mot. 2. Johnson responds that Raytheon lacks standing to argue for the government. Because the United States moved to dismiss the *qui tam* claim, *not* Johnson's retaliation claim, Johnson maintains that Raytheon cannot move to dismiss the retaliation claim on the government's behalf.

B

Raytheon has not cited—and this court is not aware of—any authority that confers on a private entity standing (or any right, regardless whether classified as "standing") to seek

- 14 -

dismissal of a suit on the government's behalf or based on its interests. Section 3730(c)(2)(A) provides that "[t]he *Government* may dismiss the action notwithstanding the objections of the person initiating the action[.]" § 3730(c)(2)(A) (emphasis added). As many of the cases cited by Raytheon explain, the FCA "recognizes that even when the government does not intervene, the *government* maintains the right to . . . seek dismissal of the case." *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F.Supp.2d 920, 927 (S.D. Tex. 2007) (emphasis added), *aff'd sub nom. United States ex rel. Gudur v. Deloitte & Touche*, 2008 WL 3244000 (5th Cir. Aug. 7, 2008). And as many other courts have explained, "[i]f the government declines to prosecute the alleged wrongdoer, the qui tam *plaintiff* effectively stands in the shoes of the government" such that if the government is capable of establishing standing, "qui tam plaintiffs satisfy the[] Article III standing requirements as well." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993) (collecting cases and commentary).

These cases do not support the conclusion that a *defendant* may step into government's shoes, even for purposes of seeking dismissal. The court therefore declines to grant dismissal based on Raytheon's invocation of the government's interests.

\* \* \*

For the reasons explained, the court denies Raytheon's motion to dismiss and its motion for protective order.

**SO ORDERED**.

December 19, 2019.

                                              SIDNEY A. FITZWATER
                                              SENIOR JUDGE